# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:25-CV-00298-KDB

| | |
|---|---|
| WINNIE CHEUNG,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff Winnie Cheung's appeal of an unfavorable administrative decision denying her application for disability insurance benefits under the Social Security Act. (Doc. No. 4). Having reviewed and considered the parties' briefs, the administrative record, and the applicable authority, the Court finds the Defendant Commissioner's decision to deny Cheung Social Security benefits does not fully address all the material circumstances of her alleged disability, specifically with respect to the side effects of one of her cardiac medications. Accordingly, the Court will **REVERSE** the Commissioner's decision, and **REMAND** this matter for further proceedings consistent with this Order.

## I. PROCEDURAL BACKGROUND

On October 26, 2021, Cheung applied for disability and disability insurance benefits under Title II, and for supplemental security income under Title XVI, alleging disability beginning on July 14, 2021. Doc. No. 3-2 at 32. Her claim was denied initially and upon reconsideration. *Id.* Cheung then requested a hearing before an Administrative Law Judge ("ALJ"), where she was represented by an attorney. *Id.* After conducting the hearing, ALJ Susan Poulos denied Cheung's

1

application in a decision dated January 31, 2024. *Id.* at 46. Cheung sought review by the Appeals Council, which was denied on March 7, 2025. *Id.* at 2–4. The ALJ's determination therefore stands as the final decision of the Commissioner. Cheung now timely seeks judicial review under 42 U.S.C. § 4050(g).

## II. THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration ("SSA") to determine whether Cheung was disabled during the relevant period.[1] At step one, the ALJ found that Cheung was not currently engaged in substantial gainful activity and had not done so from the alleged onset date of July 14, 2021, through the date of her decision. *Id.* at 34. At step two, the ALJ found that Cheung had the following severe impairments: "obesity, history of atrial fibrillation, osteoarthritis, hypocalcemia, and history of hypothyroidism status post surgery (20 [C.F.R. §§] 404.1520(c) and 416.920(c))." *Id.* at 35. At step three, the ALJ found that none of Cheung's impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at "20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925, and 416.926)." *Id.* at 36.

Before proceeding to step four, the ALJ found that Cheung had the residual functional capacity ("RFC") to

---

[1] The ALJ must determine under the five-step sequential evaluation: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite the claimant's limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and the following: lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking for a total of about six hours in an eight hour workday; sitting for a total of about six hours in an eight hour workday; occasional climbing of ladders, ropes, and scaffolds; frequent climbing of ramps and stairs; and, frequent balancing, stooping, kneeling, crouching, and crawling. The claimant should avoid concentrated exposure to pulmonary irritants such as dusts, fumes, odors, and gases; and, to workplace hazards such as unprotected heights and dangerous moving machinery.

*Id.* at 38.

At step four, the ALJ found that Cheung was unable to perform any past relevant work as a stock clerk, porter, or airport utility worker. *Id.* at 44. Finally, at step five, the ALJ concluded that there were other jobs in significant numbers in the national economy that Cheung could perform based on her age, education, work experience, and RFC. *Id.* at 45. These jobs included sales attendant, cashier II, and housekeeping cleaner. *Id.* Thus, the ALJ found that Cheung was not disabled under the Social Security Act from July 14, 2021, through the date of her decision. *Id.*

### III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604–05 (4th Cir. 2025); *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 98–99 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 102 (citation modified). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[2] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (citation modified). "This isn't a high threshold." *Drumgold*, 144 F.4th at 604. Accordingly, this Court does not review a final decision of the Commissioner *de novo, Metcalf v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Drumgold*, 144 F.4th at 604; *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation modified). Rather, "[w]here

---

[2] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not." *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction "is so narrow that it is often very difficult for a court to decide upon which side of the line evidence falls"). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that "scintilla is Latin for 'whatever a judge wants it to mean.' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id*. (citation modified); *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, the Court must always ensure that proper legal standards are being followed. *Long v. Kijakazi,* No. 1:22-CV-00091-KDB, 2022 WL 18026331, at *2–3 (W.D.N.C. Dec. 30, 2022).

## IV. DISCUSSION

Cheung seeks reversal of the ALJ's finding of no disability and remand for a new hearing, asserting that the ALJ erred by (1) failing to account for her need for frequent bathroom breaks, and (2) improperly deeming her mental impairments non-severe, resulting in an RFC that was not based on substantial evidence. *See* Doc. No. 4.

In Cheung's first assignment of error, she contends that the ALJ failed to explain why the RFC did not include any limitation related to her frequent need to urinate, a symptom which she reports to be a side effect of a medication she takes for her documented cardiovascular disease.[3] Doc. No. 4 at 9. The Court agrees that the ALJ's analysis on this point is—on the present record—deficient.

---

[3] Cheung also argues that the ALJ mischaracterized her testimony by suggesting she alleged a need to urinate every 15–20 minutes, when she testified that after taking Lasix, she urinates approximately every hour for six hours. Doc. No. 4 at 9; Doc. No. 3-2 at 70. While the ALJ may have misunderstood the precise timing, the Court does not find that this misinterpretation alone warrants remand. The more fundamental problem is the absence of any analysis of whether and how often the ALJ believed restroom breaks were needed and whether that frequency affected the RFC.

5

Although the ALJ acknowledged Cheung's reports of significant urinary frequency, she was also required to articulate a reasoned basis for crediting some evidence and discounting other evidence. *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023). Meaningful judicial review is possible only when the ALJ's rationale is apparent; without it, a reviewing court cannot determine whether the decision is supported by substantial evidence. *Drumgold,* 144 F.4th at 605. When the ALJ omits that analysis, the record contains the type of "analytical gap" the Fourth Circuit has repeatedly deemed reversible error. *See id.; Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). The ALJ must build an "accurate and logical bridge" from the evidence to the conclusions reached—something that did not occur here. *Id.* (quoting *Arakas,* 983 F.3d at 95) (citation omitted).

It is well established that an ALJ must consider the effects of treatment—including medication dosage, effectiveness, and side effects—when evaluating symptoms. 20 C.F.R. § 404.1529(c)(3); *Titles II & Xvi: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements,* SSR 96-7P, at *3 (July 2, 1996). RFC analysis likewise requires the ALJ to account for the practical consequences of treatment, including any functional limitations caused by medication side effects. *Clayton v. Bisignano*, No. 5:24-CV-511-FL, 2025 WL 2650419, at *7 (E.D.N.C. Aug. 26, 2025), *report and recommendation adopted,* No. 5:24-CV-511-FL, 2025 WL 2648230 (E.D.N.C. Sept. 15, 2025) (citing *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, at *5 (July 2, 1996)). When an ALJ overlooks or inadequately addresses these treatment-related factors, the decision may lack the evidentiary foundation necessary to withstand review. *Id.*

Here, the ALJ recognized that Cheung reported experiencing urinary frequency—whether every 15–20 minutes or every hour for six hours after taking Lasix—but did not include any

6

corresponding limitation in the RFC or explain, beyond boilerplate language not clearly linked to urinary frequency, why no such limitation was warranted.[4] Even if the ALJ reasonably rejected Cheung's assertion that she needed to use the restroom as frequently as alleged, the ALJ was still required to determine what frequency she found credible and incorporate that limitation into the RFC (or explain why a limitation was unnecessary).[5] The Court finds omission of such a discussion material.

Courts within this Circuit have repeatedly remanded where ALJs failed to evaluate or explain the functional impact of gastrointestinal or genitourinary symptoms. *See, e.g., Sherry D.,* 2022 WL 17156837; *Summey v. Berryhill,* No. 1:16CV1185, 2018 WL 708355 (M.D.N.C. Feb. 5, 2018); *Bartley v. Kijakazi,* No. 3:21CV401-GCM, 2022 WL 1416425 (W.D.N.C. May 4, 2022). In *Sherry,* the court reversed and remanded because the ALJ relied on boilerplate language—which stated that the claimant's symptoms were "not entirely consistent" with the record—without meaningfully addressing the claimant's self-reported urinary frequency secondary to diuretic medications including Lasix, which she required for her documented cardiac disease. 2022 WL 17156837 at *8–10. Similarly, in *Robinson v. Saul*, No. 2:20-cv-01659-MBS-MGB, 2021 WL

---

[4] Specifically, the ALJ explained that "after careful consideration of all of the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Doc. No. 3-2 at 39–40. However, the decision contained no discussion about Cheung's alleged urinary frequency.

[5] Although the Commissioner argues that the ALJ implicitly relied on Cheung's daily activities to discount her allegations, the ALJ did not articulate that reasoning, and the Court cannot accept post-hoc rationalizations. *See Sherry D. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 17156837, at *10 (D.S.C. Oct. 26, 2022), *report and recommendation adopted sub nom. Dodd v. Kijakazi*, 2022 WL 17121762 (D.S.C. Nov. 22, 2022). Moreover, Cheung's daily activities—such as preparing simple meals, performing chores, shopping, and interacting with others—are not inherently inconsistent with needing periodic restroom breaks, as those activities can be paused as needed.

3410544 (D.S.C. June 11, 2021), *report and recommendation adopted*, 2021 WL 2947732 (D.S.C. July 14, 2021), the court reversed and remanded where the ALJ neither accounted for off-task time required to manage urinary incontinence nor explained why the claimant's testimony was discounted as inconsistent with the medical or other evidence. The same analytical gap is present here.

Such an omission is particularly significant for Cheung because the VE testified that disruptions—such as frequent bathroom breaks—resulting in 10% or more off-task time would preclude competitive employment. Doc. No. 3-2 at 76. The ALJ's failure to make any findings regarding the frequency and duration of Cheung's restroom needs or to explain why her testimony was inconsistent with the medical or other evidence therefore leaves the Court unable to determine whether the RFC is supported by substantial evidence. Because remand is required on this basis, the Court declines to address Cheung's remaining allegation of error.

## V. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

The Commissioner's decision denying Plaintiff's application for disability and other benefits is **REVERSED.** This matter is **REMANDED** to the ALJ for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 2, 2026

Kenneth D. Bell
United States District Judge